IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-

JOSE E. LEON,

   Plaintiff,

v.

CARRINGTON MORTGAGE SERVICES, LLC,
RUSHMORE LOAN MANAGEMENT SERVICES, LLC AND
WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST III,

   Defendants.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

The Plaintiff, Jose Leon ("Plaintiff"), states his Complaint against Defendants, Carrington Mortgage Services, LLC ("Carrington"), Rushmore Loan Management Services, LLC ("Rushmore") and Wilmington Savings Fund Society, FSB d/b/a Christiana Trust as Owner Trustee of the Residential Credit Opportunities Trust ("Wilmington," and together "Defendants"), for damages and injunctive relief and as grounds therefore, states as follows:

### I.   PARTIES

1. Plaintiff is an individual residing in Colorado with an address of 12085 North Meridian Road, Peyton, Colorado 80831.

2. Carrington maintains its corporate headquarters at 1600 South Douglass Road, Suite 110 and 200A, Anaheim, California 92806.

1

3. Rushmore maintains its corporate headquarters at 15480 Laguna Canyon Road, Irvine, California 92618

4. Wilmington maintains its corporate headquarters at 2999 Westminster Avenue, Suite 265, Seal Beach, California 90740.

## II. VENUE AND JURISDICTION

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over those claims arising under Federal Statute, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims as part of the same case or controversy.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2) as the judicial district where the actions giving rise to the claim occurred.

## III. GENERAL ALLEGATIONS

7. Plaintiff is the record owner of 37 rental properties, including the real property located at 7812 Tompkins Road, Peyton, Colorado 80831 ("Property").

8. The Property is subject to a valid lease pursuant to which Plaintiff receives rental income.

9. Wilmington is the current holder of a Note and Deed of Trust evidencing the mortgage encumbering the Property.

10. On October 20, 2009, Plaintiff filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the District of Colorado ("Bankruptcy Court"), Case No. 09-32205 (the "Bankruptcy Case").

11. At the time of Plaintiff's bankruptcy filing, Wachovia Mortgage, FSB

("Wachovia") was the holder of the mortgage encumbering the Property.

14. Wachovia filed Proof of Claim No. 44 in the Bankruptcy Case, asserting a principal balance due in the amount of $175,702.21.

13. On October 4, 2012, the Bankruptcy Court entered an Order confirming the Plaintiff's Plan of Reorganization dated January 4, 2012 ("Confirmed Plan").

14. Pursuant to the Stipulation to Plan Treatment attached to the Confirmed Plan, Wachovia agreed to modify the mortgage encumbering the Property, pursuant to which the principal balance of the mortgage would be set in the amount of "the outstanding principal balance due plus all outstanding past due interest, fees, and costs allowed pursuant to the terms of each underlying promissory note[.]" The Stipulation further provided that the modified mortgage would be amortized over 30 years, at an annual interest rate of 6%, and payable in equal monthly installments. The Stipulation to Plan Treatment is attached hereto as Exhibit 1.

15. Carrington acquired the mortgage encumbering the Property on or about August 23, 2012.

16. After the Confirmed Plan become effective, Plaintiff was unable to get accurate statements from Wachovia or Carrington, as the statements received by Plaintiff reflected incorrect interest rates and incorrect amounts owed.

17. As result, on January 17, 2013, counsel for Plaintiff sent a letter to counsel for Wachovia, requesting that Wachovia resolve issues with the monthly statements and provide accurate payment coupons for the mortgage.

18. Plaintiff did not receive a response to the January 17, 2013 letter.

19. Plaintiff continued to receive monthly statements that reflected an incorrect

3

interest rate in the amount of 8.4%, an incorrect principal balance in the amount of $160,626.82, an incorrect maturity date of April 2038, and demanding a minimum payment in the amount of $55,473.02.

20. As a result of Carrington and Wachovia's failure to implement the terms of the Confirmed Plan, on February 25, 2013, counsel for Plaintiff again sent a letter to counsel for Wachovia, again advising Wachovia of the ongoing issues with monthly statements received by Plaintiff.

21. Plaintiff did not receive a response to the February 25, 2013 letter, and continued to receive monthly statements that did not reflect the terms of the Confirmed Plan.

22. As a result of Carrington and Wachovia's failure to implement the terms of the Confirmed Plan, on July 29, 2013, counsel for Plaintiff against sent a letter to counsel for Wachovia and to Carrington, advising Wachovia and Carrington of the ongoing issues with monthly statements received by Plaintiff. A copy of the July 29, 2013 letter and all attachments is attached hereto as Exhibit 2.

23. Plaintiff remained unable to obtain accurate information about the mortgage and as a result Plaintiff was unable to make payments. As a result, the mortgage was placed in a delinquent status and continued to accrue arrearages, late charges, interest, and attorney fees.

24. Carrington failed to correct the errors on the monthly statement, and continued to fail to provide accurate information to Plaintiff, including any information regarding efforts undertaken to respond to his request for the correction of errors on the monthly statements.

25. Carrington further failed to provide Plaintiff with any loss mitigation options, modification options, or a single point of contact.

4

26. On or about August 26, 2014, the mortgage was transferred to Rushmore.

27. After the mortgage was transferred to Rushmore, Plaintiff was still unable to obtain accurate information about the mortgage.

28. Plaintiff continued to attempt to obtain accurate information from Rushmore but was unable to do so.

29. Plaintiff, through counsel, continued to attempt to negotiate a settlement with Rushmore to resolve the issues stemming from the failure to implement the terms of the Confirmed Plan, but was unable to do so.

30. Rushmore failed to provide Plaintiff with any information regarding efforts undertaken to correct the errors stemming from the failure to properly implement the terms of the Confirmed Plan.

31. Rushmore further failed to send a Notice of Default to Plaintiff as required by the Confirmed Plan, and failed to provide Plaintiff with any loss mitigation or modification options or a single point of contact.

32. Upon information and belief, in or around January 2016, the mortgage was transferred to a new servicer.

33. Rushmore failed to provide Plaintiff with notice of the transfer to the new servicer.

34. Plaintiff has been unable to obtain any information regarding the new servicer.

35. Upon information and belief, Wilmington acquired the mortgage in or around April 2017.

36. In April 2017, Plaintiff learned that a foreclosure had been initiated with respect

to the Property.

37. At no time prior to learning that a foreclosure had been initiated did Plaintiff receive a written Notice of Default as required by the Confirmed Plan.

38. At no time prior to learning that a foreclosure had been initiated did Plaintiff receive information about his loss mitigation or modification options.

39. At no time has Wilmington, its agents, representatives, or assigns attempted to provide Plaintiff with notice of his modification options or a single point of contact.

40. Plaintiff has continued to attempt to negotiate a settlement of the issues stemming the failure to implement the terms of the Confirmed Plan with Wilmington but has been unable to do so. As a result, a foreclosure sale has been scheduled for June 7, 2017.

## IV.   FIRST CLAIM FOR RELIEF
**(Breach of Contract Against All Defendants)**

41. Plaintiff incorporates by reference Paragraphs 1 through 40 as though fully set forth herein.

42. Paragraph 9.10 of the Confirmed Plan provides, "The Plan, upon confirmation, constitutes a new contractual relationship between the Debtor and his creditors."

43. Plaintiff attempted to perform under the Confirmed Plan and make payments for the mortgage on the Property.

44. Defendants failed to perform in accordance with the Confirmed Plan by failing correct the interest rate to the amount agreed to under the Confirmed Plan.

45. Defendants failed to perform in accordance with the Confirmed Plan by failing to adjust the principal balance to the amount agreed to under the Confirmed Plan.

46. Defendants failed to perform in accordance with the Confirmed Plan by failing

6

to adjust the maturity date to the date agreed to under the Confirmed Plan.

47. Defendants failed to perform in accordance with the Confirmed Plan by continuing to demand payment of pre-petition arrears after the Confirmed Plan became effective.

48. Defendants failed to perform in accordance with the Confirmed Plan by failing to send a Notice of Default with an opportunity to cure.

49. As a result of the Defendants' failure to implement the terms of the Confirmed Plan, Plaintiff has been damaged through accruing arrears and late fees under the mortgage, the potential foreclosure of the Property, and attorney fees incurred in attempting resolve issues related to the Defendants' breach of contract.

WHEREFORE, Plaintiff prays as hereinafter set forth.

### V.     SECOND CLAIM FOR RELIEF
**(Breach of Implied Duty of Good Faith and Fair Dealing Against All Defendants)**

50. Plaintiff incorporates by reference Paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff had a justified expectation that Defendants would properly implement and comply with the terms of the Confirmed Plan.

52. Plaintiff acted in accordance with that expectation when he attempted to remit payments to the Defendants pursuant to the terms of the Confirmed Plan.

53. Plaintiff acted in accordance with that expectation when he made qualified written requests through counsel to have the errors in monthly statements corrected.

54. Plaintiff acted in accordance with that expectation by continuing to request accurate information and attempting to negotiate a modification.

55. Defendants breached their implied duties of good faith and fair dealing by failing

7

to correctly implement and comply with the terms of the Confirmed Plan.

56. Defendants breached their implied duties of good faith and fair dealing by failing to promptly address errors related to their failure to implement the terms of the Confirmed Plan.

57. Defendants breached their implied duties of good faith and fair dealing by failing to provide Plaintiff with accurate information about the mortgage on the Property.

58. Defendants breached their implied duties of good faith and fair dealing by failing to provide Plaintiff with notice of his modification options, or otherwise engage in negotiations with Plaintiff.

59. As a result of the Defendants' breach of their duties of good faith and fair dealing, Plaintiff has been damaged through accruing arrears and late fees under the mortgage, the potential foreclosure of the Property, and attorney fees incurred in attempting resolve issues related to the Defendants' breach of contract.

WHEREFORE, Plaintiff prays as hereinafter set forth.

## VI.   THIRD CLAIM FOR RELIEF
**(Violation of the Real Estate Settlement Procedures Act Against All Defendants)**

60. Plaintiff incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

61. Carrington was acting as a "servicer" as defined by 12 U.S.C.S. § 2605(i)(2).

62. Rushmore was acting as a "servicer" as defined by 12 U.S.C.S. § 2605(i)(2).

63. Upon information and belief, Wilmington may be acting as a "servicer" as defined by 12 U.S.C.S. § 2605(i)(2).

64. Defendants' failed to comply with the Real Estate Settlement Procedures Act ("RESPA") [12 U.S.C. § 2601 *et seq.*] by:

    a.    Failing to take timely action to respond to Plaintiff's request to correct errors relating to application of the incorrect interest rate, an incorrect principal balance, an incorrect maturity date, and an incorrect payment amount;

    b.    Failing to provide Plaintiff with a written explanation of the failure to correctly implement the Confirmed Plan and the actions taken to correct the error;

    c.    Failing to provide Plaintiff with contact information for someone who could provide additional assistance to Plaintiff;

    d.    Failing to provide short-term loss mitigation options;

    e.    Failing to provide Plaintiff with adequate notice of the transfer of the mortgage to new servicers; and

    f.    Failing to provide Plaintiff with a single point of contact.

65. As a result of Defendants' violation of RESPA, Plaintiff has been damaged through accruing arrears and late fees under the mortgage, the potential foreclosure of the Property, and attorney fees incurred in attempting resolve issues related to the Defendants' breach of contract.

66. As a result of Defendants' failure to comply with RESPA, Defendants are liable for exemplary damages as a result of the pattern of noncompliance.

WHEREFORE, Plaintiff prays as hereinafter set forth.

### VII.  FOURTH CLAIM FOR RELIEF
### (Injunctive Relief Against Wilmington)

67. Plaintiff incorporates by reference Paragraphs 1 through 62 as though fully set forth herein.

68. A foreclosure sale is set for the Property on June 7, 2017.

69. Injunctive relief is necessary to maintain the status quo until this case is finally adjudicated.

70. Plaintiff has a reasonable likelihood of success on the merits.

71. If injunctive relief is denied, Plaintiff will suffer irreparable injury as a result of the foreclosure on the Property, including loss of equity and rental income.

72. The tenants occupying the Property will also be irreparably injured as a result of the foreclosure on the Property.

73. The potential injury to Plaintiff substantially outweighs the injury that would be suffered by Wilmington if injunctive relief is denied.

74. The injunction would not be adverse to public interest.  The injunctions would further the public interest since there is no reason why mortgage lenders and servicers should not be required to adhere to the terms of a confirmed chapter 11 plan or meet the terms of the regulations that govern their business conduct.

WHEREFORE, Plaintiff prays as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

    A. Enter judgment in favor of Plaintiff and against Defendants for Breach of Contract;

    B. Enter judgment in favor of Plaintiff and against Defendants for Breach of the Implied Duty of Good Faith and Fair Dealing;

    C. Enter judgment in favor of Plaintiff and against Defendants for violation of the Real Estate Settlement Procedures Act;

D.	Award Plaintiff injunctive relief enjoining any further foreclosure action against the Property prior to a decision on the merits in this case;

E.	Award Plaintiff actual damages in an amount to be determined at trial;

F.	Award Plaintiff exemplary damages in an amount to be determined at trial;

G.	Award Plaintiff all attorney fees and costs associated with this matter; and

H.	Grant such additional relief as to the Court appears just and proper.

DATED: June 5, 2017					Respectfully submitted,

						By:	*/s/ Keri L. Riley*
							Lee M. Kutner, #10966
							Keri L. Riley, #47605
							**KUTNER BRINEN, P.C.**
							1660 Lincoln Street, Suite 1850
							Denver, CO 80264
							Telephone: (303) 832-2400
							Facsimile: (303) 832-1510
							Email:  lmk@kutnerlaw.com
							Email:  klr@kutnerlaw.com